24-6006, 24-6010, 24-6048, 24-6734, 24-6747, and 24-6749. We are hearing remotely. I guess the way we will do this, we didn't get into rebuttal. I don't know if each of you want to rebuttal, but we will give each of you 10 minutes, and then if you have rebuttal time, any of you, you can choose to use that. We will go through, and then after that, we will turn to the government, and then we will come back to any rebuttals. We will start first with Ms. Conrove. Good morning, Your Honors. May it please the Court, Marissa Conroy on behalf of the appellant Luella Jao. Your Honors, I intend to use five minutes of the allocated time and would intend to reserve one minute for rebuttal. Thank you. This is a case about when the guidelines number is formed, not whether that number is ultimately correct. Rule 32 protects notice before the guidelines move. In this case, a six-level enhancement was applied, which appeared for the very first time at sentencing, that ultimately shifted the guidelines range and anchored the district court sentence. A later sentencing hearing couldn't undo the procedural defect. So, we are respectfully asking this court to vacate and remand for limited resentencing with the loss aggregation disclosed and tested before the guidelines range is set. So, going back to the... Can I back up? Because, I mean, so you want to limit it at $40,000 is basically... What are you asking for? When you said the loss calculation before, what was that? So, originally, the loss calculation was approximately $17,000, which related to the commissions with Joshua Jao, and that was a four-level enhancement, which was what was agreed to in the plea agreement and documented in the original and draft PSR by probation. On the day of sentencing, the probation officer provided a spreadsheet and indicated there was an additional $225,000 in loss, which would then result in an additional... Hold on. Oh, go ahead. Wasn't the discovery that all of these calculations were based on provided to the parties, that wasn't a surprise. Am I right about that? The data is not a surprise. It's the methodology that was never provided and the ultimate basis for the methodology of getting to the additional six-level. So, then the district court asked the probation officer to give a little bit more detail, a final calculation. Objections were raised, and the district court continued the hearing, correct, and gave the parties an opportunity to look at that and have their arguments figured out or what their challenges were going to be before she actually did the sentencing. Yes and no. So, ultimately, there was a sentencing hearing. Certain facts were entitled to be contested, but by the time that sentencing hearing happened, a PSR had already applied the additional enhancement. The district court was operating off of the fact that this was now a 10-level increase rather than the original four-level increase. I'm struggling to figure out why that's different from the ordinary course in terms of, if the district court had not granted a continuance and allowed the parties to assess the calculation that was done sort of last minute, we'll give you that, then I would understand the argument. But the district court did continue the hearing and allow that period of time for the parties to look at the information and formulate whatever objections and arguments that they had. So, I'm struggling to see how that's a due process issue when all of this was ultimately based on, as you've acknowledged, data that the parties had anyways. That wasn't a surprise. Yeah, well, it's a Rule 32, Issue 2, is what I'm saying. And so, by the time that second sentencing hearing was held, the district court was already anchored off the new guidelines. They were operating off the premise that this loss was established and it was merely contesting the facts. So, that's where the deprivation occurred. What never happened was the district court's determination that that additional $225,000 was relevant conduct under 1B1.3. But the district court took testimony on that. The district court took testimony as to the numbers, but not as to the foreseeability. Was this attributable, all of this, to Ms. Zhao? Temporally, her role, all of the analysis under 1B1.3, that did not happen. The district court was already operating off the premise that the enhancement applied. Was there something that you would have done on that point to defend your client that you weren't able to do at the continued hearing? Absolutely. Tell me what. I don't understand what that would have been. So, first, the theory for the loss should have been disclosed, the basis for that. And we would have been able to go through. We're not disputing those aggregate transactions existed. But was each one of those transactions attributable within the scope of what's defined as relevant conduct under 1B1.3 as to Ms. Zhao? Was what her role was defined in that conspiracy, did that limit whether those transactions were attributable to her? Temporally, were all of those transactions attributable to her? Back up, because if I understand this correctly, what's up on appeal to us is the sentencing. You have not separately challenged the restitution award, correct? My co-counsel is addressing restitution.  Is that up on any of these appeals? Is the restitution award up on any of these appeals? I'm hearing a nod. So, it sounds like I'll wait and hear from your co-counsel. Ms. Bell is addressing the restitution issue. Yes, that is correct. I am simply addressing what we are contesting is the Rule 32 issue. Deny the opportunity to challenge that enhancement before the district court used that as the anchoring guidelines at the second session. You don't disagree with the fact that you knew that the district court was not bound by the government stating that we weren't going to seek sentencing based on any more than $40,000 in loss. So, you knew that the district court could go above that, right? Absolutely, we're not disputing the district court. didn't give you fair notice to be able to challenge. Absolutely, it was the process. But I thought I heard you say that you weren't challenging the figures, that you were only challenging whether your client was related to that loss. Is that correct? I'm not challenging the existence of the figures. It's what's properly attributed to Ms. Zhao. That is correct. Okay, and what did she plead to? Are you asking me the factual basis? I'm asking you what the charge is. 18 U.S.C. 1028. Is that a conspiracy charge? Yes, it was a conspiracy. Okay, then what kind of argument do you think you can make in defense of your client to a conspiracy charge if you're not really challenging the figures? Because a conspiracy and relevant conduct are different things as defined under the guidelines. 1B.1.3 specifically says just because it's a conspiracy, you still need to assess whether the relevant conduct can be attributable to that individual defendant and their particular role in the conspiracy. But if it was attributable to any of the defendants, wouldn't it be attributable to your client under a conspiracy theory? No, because individuals all play different roles in conspiracies. The temporal duration can be different. As it was in this case, Ms. Zhao joined the conspiracy at a later date. So all of those factors are part of the relevant conduct analysis. Conspiracy and relevant conduct are not the same thing. And I see my time has expired. So with that, I would reserve for rebuttal. Okay, thank you. Thank you. And we'll hear next from Mr. McDonald. Good morning, judges. May it please the court. Charles McDonald on behalf of defendant appellant Joshua Zhao. Your Honor, the facts of my case are somewhat different from the other co-defendants. In my case, the forged signature calculations were never mentioned in the PSR until the judge created a dispute with the PSR. So she manufactured the dispute so that she could enhance the amount of the loss. Well, wait. Oh, you're saying the officer manufactured the dispute. Well, the record reflects, Your Honor, that the officer amended the PSR following a phone call from the court. So this is at 280 to 281. The officer said that, you know, the court called him the night before the hearing. They discussed at length the case. Wait, I just want to be clear who you're saying manufactured the dispute. You're suggesting the district court, the judge, manufactured the dispute. That's correct, Your Honor. There was no dispute with the loss calculation when it was presented to the court in the PSR. The government agreed. The defendant agreed. No, counsel, that's not true. That's just flatly not true. The government said we're not going to seek sentencing based on more than $40,000. But the government never said that was the total loss. To the contrary. So, I mean, and maybe this goes to the disqualification, which I thought was very ill-founded to try and disqualify the judge based on this. And that's a little bit what I'm sensing. That's why I'm asking you these questions because, to me, I mean, look, we have a separate question about whether the district court approached this correctly, you know, in the procedure. But I don't see any problem with the district court asking the question of, in fact, not a problem with it. Exactly what a district court should do is say, is there evidence of more loss here? And if so, you know, let's do an investigation on that and let's have that. I mean, are you saying that the district court was acting impartially or, you know, without partiality? That's correct, Your Honor. And the probation officer stated on the record that the phone call caused him to amend the PSR when it was otherwise agreed to between the parties. And this call happened the night before the hearing, Your Honor. Okay. And what rule does that violate? Well, the court created the dispute, Your Honor. There was no dispute. But, counsel, a court can create a dispute. That's what you're missing. You seem to be coming in here arguing, well, the government, you know, we got a sweetheart deal from the government on sentencing. And we wanted the district court to bless that. Our case law flatly rejects that position. No defense counsel should have that expectation. A district court is always free to ask questions. Yes, Your Honor, I agree. But we believe she went beyond asking questions, Your Honor. She prepared the probation officer. She created the exhibit by amending the PSR. And then she tried the case. She prosecuted the higher loss amount. And that's the point we're trying to make. I mean, it's not unusual, counsel, for us to have a judge sort of sniff out that justice is not being fully served in a good deal that's been negotiated between the United States Attorney's Office and the defendant. This is not, I mean, this has got some, this has got its own set of facts. But it's not a profile that is new to us. So that's why I'm asking, what's the, what rule here, are you arguing this is a violation of the due process clause? Is it a violation of the federal rules of criminal procedure? Is it a violation of some other statute? Is it a violation of the sentencing guidelines? What rule of law here prohibits the judge from inquiring as to whether there's been any other loss here that was not accounted for in the PSR and the plea agreement? It's a due process clause, Your Honor. We feel that she lost her partiality or impartiality. And the basis? It's really disqualification that you're after. Yes, Your Honor. And the more I listen to the argument, both from the briefing and what you're presenting today, it seems the root of all of this is almost like an estoppel argument of, like, the district court was bound by the PSR, that the parties get to object to the PSR. If they have things in there they don't like, but the district court just has to take it and run with it, absent a party objection. And that's just not how this works. So I think you're sort of hearing a little bit of incredulousness or surprise or something from the entire bench of just, like, that's just not how this works. Understood, Your Honor. Okay, do you want time for rebuttal? Yes, Your Honor, I reserve time for rebuttal. Sounds good. And now we'll hear from Ms. Bell. Thank you, Your Honors. May it please the Court. Alyssa Bell on behalf of Ms. Sayori Jao. I wanted to make clear at the outset that my client has finished serving her sentence and has been deported to her home nation of Japan. And that is why I'm addressing solely the restitution issue. That remains outstanding as to her. Your Honor, I heard a question at the outset as to whether any issues with respect to restitution had been preserved. They absolutely have. That was one of the key arguments in my client's opening brief. The government has responded to it. It was a focus of the reply brief, and so it is preserved for this Court's review. And the question for restitution is whether that calculation, I mean, whether it's supported by reliable evidence, right? Yes, exactly, Your Honor. That's exactly correct. And your position is it's not reliable evidence? Yes, and let me make clear why, Your Honor. The district court heard testimony from the victim and from the probation officer. The victim testified in narrative form that he had hired an expert, two experts actually, to do a handwriting analysis on the one hand and to do investigation into particular transactions on the other. The issue here is not the fact of loss and that some award of restitution would be appropriate. The issue is the extent of that restitution award. And in that regard, it is only the handwriting analyst who has an issue because the victim did not himself, of course, do any handwriting analysis. He relied on his own retained expert who compared signatures to signatures on IDs. And so, in effect, the district court relied on the victim's testimony that he had hired someone who was reliable. And our contention is that that is insufficient because the affiant before the court had no percipient knowledge and there was no basis for the district court to test that evidence. And the government, for its part, proffered no additional facts to meet its burden by a preponderance. And so I'm curious, but I mean, the district court has broad authority to consider what it finds to be relevant evidence at sentencing to make these kinds of judgments. So what standard of review do you think we apply here? Clear error, Your Honor. I believe this. Our contention is that this finding of fact was clearly erroneous. I would call the court's attention. The finding of fact is the calculation. Yes, the amount of restitution. It seems like your argument is more about the evidence that she's considering, which is why I'm asking, because that would seem like an abusive discretion standard. She shouldn't have looked at this piece of information or deemed it relevant or deemed it reliable. Isn't that the nature of the argument you're actually making? I think that's probably correct, Your Honor. It is a little confusing exactly how these standards lay layer on top of each other. Clear error would apply to the district court's finding of fact. She did make factual findings as to the amount of restitution. It is that factual finding that we dispute. Would you agree that if we concluded that the information that the district court deemed to be relevant and reliable enough to rely on and to use as the basis of our decision, if we accept that premise, that the calculation was not clearly erroneous? Yes, Your Honor. I agree with that entirely. Our contention is purely as to the reliability of this evidence, and I would call the court's attention to United States v. WAC-9. That is the case upon which both parties, including the government, principally rely. In that case, the restitution award was properly for the amount of attorneys' fees, and the victim put a declaration into the record of his attorney that the attorney had charged him a certain number of fees. A certain amount of fees, I should say. And this court found that that declaration was insufficient because it did not state the attorney's qualifications nor his hourly billing rate and merely gave an aggregate number. And what we have here is substantially analogous. In this case, we cannot tell what the qualifications of the handwriting expert were, qualifications and what methodology that person may have relied on. Expert sounds impressive, but that is merely the victim's characterization and his own good faith belief in terms of who he hired. But there was nothing before the district court. So essentially, the two affiants before the district court were competent to testify that the math was correct. But they were not competent to testify that these, in fact, were forged signatures. I thought the district court went through and actually found some signatures that she determined were forged. I don't believe that's accurate, Your Honor. I believe, in fact, the district court went through the discovery to ascertain whether all parties had the relevant evidence before them in discovery. And I think that dispute, in turn, turns on my colleague's argument as to the fairness of the procedure here. But the district court verified that this evidence was, in fact, available to the parties in discovery, although it was undisputed by all that no total had ever been calculated or provided up until the point that the district court made that inquiry. But the fact remains, Your Honor, that there was no affiant before the court who could state that these forged signature commissions, so-called, actually derived from forged signatures. In that respect, the district court credited the testimony of the victim that there was a third party who had done reliable work. And that's simply insufficient for the government to rely on in meeting its burden by a preponderance of the evidence. What role does the plea agreement and sort of the proffer of an admission of unlawful conduct play in this analysis? Well, the fact of the fraud is uncontested and admitted to by my client beyond reasonable doubt. There were there was some amount of restitution and no amount was agreed to in the plea agreement. But there was some amount of restitution that was required for the so-called forged signature commissions. But how much? It seems on the nature of the argument that you're making that it's an on-off switch. It's either the information that was looked at by the district court was reliable on a basis to make a calculation or it wasn't. So am I am I mischaracterizing sort of what you're saying? No, you're not, Your Honor, but I don't I don't follow how that relates to the court's prior question as to whether she admitted admitted conduct that would give the district court a basis to impose restitution. We make no argument that she was not responsible for forged signature commissions. I think that's set forth clearly. But you want to stand behind and say, well, you can't you haven't actually proven it to the degree that we think you need to approve it. Yeah, we admitted that we did this. We forged signatures. But the person that you have who provided evidence didn't do a good enough job. And so no restitution because you can't prove it. I don't think no restitution would be the right remedy here. The remedy would be to vacate the restitution order and to remand for further proceedings so that competent evidence could be put before the court and a proper determination of restitution could be made. OK. One last question. Did you did you did you object to the district judge that the forged signatures were not had been wrongfully attributed to them? Did you did you make that objection? The objection below was joined a joined objection. So we. And what was that? What was the precise nature of that objection? The objection was to the reliability of the evidence before the court from which both loss and restitution were derived. I think the government in its brief admits makes no argument that the objection was improperly preserved. OK, well, we'll give you time for rebuttal if you like, and then we'll hear from the government. Thank you. Good morning. May it please the court. Ben Petersburg for the United States. We asked that this court affirm the judgment of the district court below. We think that the district court first acted within its discretion to call and question witnesses to resolve this factual objection to the presentence report. Excuse me, I'm sorry. And second, what about on that point? Did the district did the district court need to do more? We just heard test argument from opposing counsel that there was never specific testimony showing the forgeries here. Now, I mean, I'd be interested in knowing. What is required there? Because as I read our case law, it doesn't require, you know, a line item by line item analysis, but it does require. I'm trying to think how we set it, but sufficient evidence. Sure. And I think the guidelines say, you know, you need at least a reasonable estimate of loss. Yeah. Reasonable estimate of the loss. So they're arguing, I guess, under Zolt, that this is not a reasonable estimate of the loss because there wasn't specific evidence to tie this spreadsheet to actual fraud. That was what was pled to. And I think the record actually says otherwise. And the court's methodology was she looked at the undisputed facts in the plea agreements, which stated specifically that all three of the appellants engaged in this forged signature commission fraud. So, as I said, the fraud itself is undisputed. And the only question was, what is the scope of the fraud that they committed? We have the testimony, as we heard from the victim in the case, Stephen Kasperbauer, the representative of Lupine Beach Club, who did say he hired a handwriting expert. And that's where at least the initial universe of suspected fraudulent commissions came from, was that person's review of these commission receipts. So I have a practical question right here.  If this hadn't been resolved by a plea and the government actually had to meet a burden for proving restitution, I mean, you chose not to do that and how this thing went down. But if it had gone the other way and you actually had to meet a burden, would you have relied on this evidence or would you have done your own investigation? In terms of restitution specifically? And the amount of loss. I mean, I think they're bundled together. Would you have relied on the data that was provided to provide the calculation or would you have had the FBI or somebody look at these and do their own sort of analysis of the money? I think it would be a combination of both. And we did have a combination of both. You can see in the record that the district court actually reviewed reports from the United States Secret Service who were involved in this investigation. There was a task force officer that tracked down some of these sales agents whose names were used on these fraudulent commissions, showed them the commission form and had them confirm, that's not my signature, I didn't receive that commission. And the district court judge at ER 376, and those are Luella's excerpts of records, actually says she looked at one of those commission forms that the sales agent confirmed was fraudulent and saw that it was authorized by Luella Jowell. She saw her signature at the bottom of it. So we have at least some independent verification that these four signature commissions were in fact fraudulent. The victim also hired, I'm not sure if it's a consultant or an employee, but someone named Toshi Ito who did some additional verification after the handwriting expert identified these forged commissions. And what she did, and as the victim testified, was she tracked down some of the customers themselves who had made the bookings and confirmed with them that they had actually booked directly with the company and had not used a sales agent, even though there was now a commission form that showed a sales agent had been added to that reservation. So you've got some confirmation of the fraudulent nature of these commissions from both the customer side and the sales agent side. Right, I understand that, and I guess I come back to my question of if the government knows that because of how the case is being resolved, it's going to have to meet the burden and prove it, do you rely on this kind of evidence, or do you do more? We would rely on that evidence. That was the evidence that we had. I mean, the court reviewed the discovery that was produced to the defendants, that was produced to the United States Probation Office. That's what took place. That's what we would have had to have relied on. I mean, the government could have hired its own expert and done a more thorough analysis. Yeah, perhaps in hindsight, the government could have. I mean, I understand I'm asking you a hypothetical because that's not this case, but I'm just trying to – I mean, she makes an argument that has some logical appeal in the sense of there are reasons to doubt the validity and accuracy of this information because we don't know a lot about how the – not the sort of core data, but how it was analyzed. And I will note no one – there was no objection to the reliance on this handwriting expert below. There was no – We're reviewing for plain error in your view. Absolutely, yes, in that circumstance. I don't think that argument was actually articulated in the same fashion in the briefs. That's the first time I've heard that in this case. So if that had been raised below, perhaps more information would have been produced in order to rebut that, perhaps by the victim because the government was precluded in that circumstance. I mean, it just seems to me one of the things we're grappling with here is ZOLP. I mean, I come back to that. It says the court need not make its loss calculation with absolute precision. Rather, it need only make a reasonable estimate. But, I mean, that leaves a lot of latitude. But I guess the question we have to ask is, is this beyond a reasonable estimate? I mean, I think you would agree this wasn't done with absolute precision in the sense that you didn't go through, you know, 2,000 transfers and say this was fraudulent, this was fraudulent, this was fraudulent. You would agree that wasn't done, but you think that this was a reasonable enough estimate that it satisfies our legal requirement. Right. We think that the court's methodology does satisfy that reasonable estimate that we do. She relied on testimony from the victim. The victim provided a separate affidavit that asserted essentially the same loss amount. And the court confirmed that there was at least some independent verification of these forged signatures. Okay. So then let's get into kind of the procedural arguments that are being made. Sure. One, Joshua, do I have it right, Joshua was not in his PSR?  What impact does that have, if any? I don't think it has any impact. Why? Because of the way the court handled it. Now, it certainly came as a surprise to the defendants that the probation officer amended what had been a final pre-sentence report at the sentencing hearing. And the defendants raised that issue, asked the court for a continuous, and the court granted that continuous, and gave them something like one week to file objections to these amended calculations, scheduled an evidentiary hearing to resolve any of those objections almost two weeks later. And so these appellants had an opportunity to challenge those new calculations and challenge the facts that supported the new calculations. I'm not sure what else the court could have done differently that would have provided more due process, as is, I guess, asked for by the other side. I mean, she could have provided more time, more than, I think it was about 12 days. More time if they needed it, I guess. Sure. And I think that is a notable point. When the evidentiary hearing came around, the courts announced its intentions and said, you know, the government is bound by its stipulations in the plea agreement, the court is going to be the one to call the witnesses, and I'm going to call the probation officer. No one objected to that process. It may not be relevant because I think the government acted appropriate here. They agreed to $40,000. They told the district court, we've agreed to $40,000. We're not going to do – the district court knew that if it wanted to go above that, it was on its own. The government couldn't, you know – so I think the government acted appropriately. But why – the government always intended to get a higher restitution amount. Correct. So – and maybe I'm asking too many questions here, and if I am, forgive me and you don't need to answer them, but was the $40,000 because of a negotiation to get the plea deal done or was it just – I guess in some sense you didn't care as much about the sentencing. I mean, it didn't have a huge impact on how long they were – I mean, one was in for 24 months. The others were in six months. I guess if the $40,000 had been accepted, they could have gotten away with no prison term, which apparently the government was okay with. The government basically was taking the position we don't care about a prison term. We just want to make sure that at the end of the day the restitution amount is there. That was the calculation that went into this. And I think that's a fair characterization of what took place. I know there was some discussion amongst counsel when they objected to this that, hey, this was a negotiated term. We spent a lot of time working this out with the government. And I think, you know, without going too far outside the record, the government has some practical considerations in making this. And one of the key goals was to preserve the victim's ability to seek full restitution in the case. So was there a – did the government have a restitution figure in any of the plea agreements? No. Was there a restitution figure in the original PSR? I don't believe so. But the figure would have been the $40,000 that was simply the limit in the guidelines. It was actually $17,000 was the loss attributable to Joshua.  And so the rest of this, what amounts – what ends up being over $240,000 was augmented to $17,000 that everybody agreed to. So did it appear that the government was going to agree to only a $17,000 restitution in the first PSR? I would point you to the plea agreements in the case. And in the restitution provision, there's a carve-out, and it says specifically that the government may seek a restitution amount higher than the loss amount stipulated to earlier in the plea agreement. So there's sort of a carve-out that – You were not bound by the $17,000 figure? Not for restitution purposes, no. And we did file a restitution memorandum that saw that higher figure. And after the probation officer amended the final PSR and at least two of the defendants filed written objections, the government also filed a response and said, look, we're bound by our plea agreement, we're not going to advocate for a higher loss amount, but we do still intend to seek the full amount of restitution. Yeah, I'm looking at – I think this must be Joshua's, and paragraph 13 says the United States and defendant hereby stipulate, defendant shall pay restitution jointly and severally in an amount to be determined by the court at sentencing or at a restitution hearing thereof. So I don't see that it says anything about the United States seeking a higher figure. There's just no figure referenced there at all. I don't know whether – and I just have Joshua sitting here in front of me. I don't know whether the others have a different language. That's at ER 473, and I think the next sentence there is that the parties understand and agree that the restitution calculation is separate and apart from the loss amount calculation. That language does not appear in the one that I'm looking at. I'm looking at 462. So they may be different. Yeah, I may be looking at – They may be slightly different. I do have – this says United States of America v. Joshua Hans Abat-Jao, and so this is Joshua's plea agreement, and his – I'm sorry. I'm sorry. I've got Sayori's. Okay. I've got Sayori's, and hers does not have that language in it. I'm sorry. I'm not sure why there's a discrepancy, but both the Luella Jao and the Joshua Jao plea agreements do say – there's another sentence that says the parties understand that the restitution amount could be greater than the loss amount calculation. Well, to a certain degree, I'm trying to – maybe it doesn't matter because they haven't made that argument. I guess I'll ask them on rebuttal, but they haven't made the argument that the plea agreement limited – that the restitution just has to be capped at 17,000 or 40,000 or whatever was in there. They haven't made that argument. They've just said whatever you did above that hasn't been proven.  Correct. I think that's a fair characterization. You know, I did want to speak to this disqualification issue a little bit. You know, I think one of the key points here is that none of the appellants have pointed to anything in the record that shows the court acted with partiality or bias. They haven't pointed to a specific line of questioning, you know, that the judge was being abusive or interrupted or leading or directing the examination towards a particular conclusion. You know, I think that those contentions are really totally unsupported by the record. You know, they've asserted that the judge prejudged or predetermined the loss amount, but the record really shows that the district court only learned about these four signature commissions through the stipulated facts in the plea agreement and this four signature commission charts in the PSR. Really, it was only natural for her to ask a question about why there was this chart with thousands of entries in the PSR that wasn't actually factored into the guidelines. You know, if she had actually prejudged... So wait, you just said that she asked why there was a chart in the PSR with all these entries. What we heard from Mr. McDonald, I thought, was that she called the officer, told him to amend the PSR and add that. What actually happened there? You know, I think the testimony from the probation officer himself is that the judge called and asked, you know, why is this in here and do you have a total? You know, because there's all these entries. So the chart wasn't summed. Okay. So the district court judge did not actually request that the chart be created. Maybe I'd misunderstood. The chart was already in the draft PSR that was issued in something like July of 2024 before the sentencing in September. So at least in the PSRs for Luella Zhao and Sayuri Zhao. The only question that I have on this point is, I mean, we know from our case law and I think the Supreme Court as well, that sentencing courts have broad discretion. We've talked a little bit about that in terms of what they can consider at sentencing and even if they feel like the party's presentation has been inadequate in some way, the court can ask for more. The one thing that gives me somewhat pause, and this is out of a Supreme Court case, I don't know how to pronounce it, I think it's Caricia, anyways, says a judge cannot distort or add to the evidence. So I assume that your position is that the district judge here and how she handled this hearing did not add to the state of the evidence, but I would like you to explain why you think that's true. I think she clarified what was already present in the PSR. She asked questions about this chart. Where did it come from? What does it stand for? Why should I consider that or should I consider that as part of the loss amount in the case? So I don't think in that sense certainly didn't distort anything. But I don't think that added anything necessarily either. And I'm not exactly sure where that, Caricia, I'm not sure how to pronounce that either. I'm not sure if that's in this context of a trial, you know, before a jury, or if that applies the same way at sentencing where the court does have much broader discretion and authority. I read the case, I can't remember 100%, but I'm pretty sure it's sentencing because we give a district court a lot of discretion in that space because ultimately that sentencing decision lies with the court. So you have more leeway in terms of burdens and, you know, intervening in the proceedings than you do in the trial. Absolutely. And this court has recognized that in, for example, U.S. v. Allen and U.S. v. Wing, two of the cases that we cited in our brief that are, I think, remarkably similar circumstances where the court wanted to hear testimony on enhancements that the government had either agreed didn't apply or didn't address in the plea agreement and so was prohibited from advocating for. In both cases, the court at least did some of the questioning. In Wing, the court did all of the questioning, called a probation officer to talk about an obstruction of justice enhancement, and this court found no error in both circumstances. And I don't see how we can meaningfully distinguish what took place with the district court here and what took place in those two cases. I see I do have some time remaining. I'd be happy to answer any additional questions otherwise. No, I appreciate it. Thank you very much. I think you've covered all the topics. Thank you very much. We ask that the court affirm the district court below. Thank you. All right. We'll walk through again then for rebuttal, and we'll start again with Ms. Conroy. Just briefly, Your Honors, in regards to these amounts contained in paragraph 30 of the PSR, this is not a case about clarification. This was essentially a material alteration to the guidelines, and what we're saying is the error occurred in that the district court adopted those new guidelines and the enhancement and anchored that as the basis of its sentence. Instead, what should have happened was the notice was complied with the aggregation and the basis for the aggregation. Not just the math occurred, and then the new guidelines applied, and for that reason, we would ask for a limited remand. Okay. Thank you. And Mr. McDonald? Just real quick, Your Honor. So it's our position that the district court added to the evidence. Can I ask a question? Because maybe I misunderstood your argument. I thought you'd said before that the district court called the probation officer and asked him to add this chart into the pre-sentencing report. Maybe I misunderstood that. I'm sorry, Your Honor. I apologize if I wasn't clear. So my comment was that we inquired with the probation officer, sir, why did you add this section 32 paragraph? It was never in our pre-sentence report. The probation officer's response was, yes, well, I did get a call from the judge. So the question was, what caused you to add that paragraph 32? His response, yes, well, I did get a call. But there's paragraph 32, and then there's a chart. Or are they the same? They're the same, Your Honor. Okay. That chart, paragraph 32, was never included in our final PSR, only on the day of the sentencing. Okay. Go ahead. Sorry, I didn't mean to cut off your argument. That's it, Your Honor. Okay. Thank you. Thank you, Mr. McDonald. And then Ms. Bell. If I could make three points, Your Honor. The first is, as to the standard of review, I would draw the court's attention to page 18 of the government's brief, where the government takes the position that Ms. Saori Jo objected to the forged signature commissions. Nowhere in its discussion of restitution does the government claim waiver or that plain error review applies. And so our position is that the government has waived waiver. So that's the first point. As to the second, government counsel explained that there was nothing in Ms. Jo's plea agreement that bound the government to a particular restitution number. And I think in that case, it calls into even greater question, the government's decision not to put on any evidence of its own. This is a case where the Secret Service was involved only at the very beginning and interviewed two witnesses. That's simply insufficient in this case to support a $180,000 restitution order. That would be the second point. And the third, I hear the court grappling with the issue of how the case law has given district courts some discretion. A restitution order does not need to be fashioned with absolute precision. I did want to draw the court's attention to United States versus Walk9. The pin site is 557. And this is, I'm just going to read very briefly. I'm sorry. I'm just finding the police. So the summary is only in the summary would be the victim affidavit. The summary is only listed. The last claimed EG, Joe Cavallo attorney at law and the amount of the loss EG, 250,000. These loss summaries did not contain itemized lists, indicating for example, the time spent by the attorney, the activities engaged in by the attorney and the attorney's credentials and billable rate. In light of the remedial purposes of the MVRE, our precedent grants district courts, a degree of flexibility in accounting for a victim's complete losses. Despite this flexibility section three, six, six four minimally requires that the facts be established by a preponderance of the evidence. And it continues from there. And our position is that the facts were not established by a preponderance of the evidence in this case, given that the district court relied upon testimony of a science who could not attest that in fact, $180,000 in restitution derived from forge signatures from the forge signature commissions, because of the evidence before the court was unreliable. The district court abused its discretion and finding that the government has met its burden by a preponderance of the evidence.  Thank you. Thank you to all council. Thank you to the defense council for coordinating the arguments and your clients have been well served by your arguments. So thank you for attending. It's been helpful to the court. Thank you to the government. The case is now submitted and that concludes our arguments for the day. Thank you,  All rise.
judges: BYBEE, NELSON, FORREST